# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

ROBERT HOUGHTION                                           CIVIL ACTION

VERSUS                                                     NO.  08-5063

N. BURL CAIN                                               SECTION "B"(2)


## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  It was subsequently reassigned to me.  Record Doc. No. 12.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

## I.   STATE COURT PROCEDURAL BACKGROUND

The petitioner, Robert Houghtion,[2] is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[3]  Houghtion and a co-defendant, Ronald Dickens, were indicted by a grand jury in Orleans Parish on December 20, 1990, on the following 13 counts:[4] (1) aggravated kidnapping of BH,[5] (2) aggravated kidnapping of PH, (3) armed robbery of PH, (4) armed robbery of BH, (5) aggravated rape of BH, (6) aggravated crime against nature of BH, (7) second degree murder of Christopher Ciaccio, (8) aggravated kidnapping of MM, (9) aggravated kidnapping of DJ, (10) armed robbery of DJ, (11) armed robbery of MM, (12) aggravated rape of MM, and (13) armed robbery of Ivan Lagos.

The Louisiana Fourth Circuit Court of Appeal summarized the facts of the case in relevant part as follows:

> In the early hours of October 20, 1990, P.H. and B.H. (due to the nature of the offenses involved, the victims' names will not be used) went to the Maple Leaf Bar on Oak Street where they met friends. They left the bar after each having had a few beers; and, when they reached B.H.'s car, which was parked on Cambronne Street, P.H. saw that the window on the passenger side had been smashed and B.H. saw that the door on the driver's side was slightly ajar.  Two men then approached them, and one of the men held a gun.

---

[2]Although the indictment was amended to spell petitioner's name "Houghtion" the state courts interchanged the spelling with "Houghton."  St. Rec. Vol. 4 of 4, Minute Entry (2 pages), 3/25/91.

[3]Rec. Doc. No. 1.

[4]St. Rec. Vol. 1 of 4, Indictment, 12/20/90.

[5]The state courts and the record alternate between the names and initials of the victims, who were all adults.

The man with the gun, who was later identified as Ronald Dickens, walked up to P.H., demanded his money, and ordered him and B.H. to get into the car. They complied with B.H. getting into the back seat with Dickens and P.H. sitting in the front passenger seat with the other man, later identified as defendant, Robert Houghton, in the driver's seat. They drove to the Alerion Bank on Carrollton Avenue where defendant used both P.H.'s and B.H.'s automatic teller machine cards to make withdrawals. A bank security camera videotaped defendant's actions.

After making the withdrawals, defendant got back into the car and drove around until he reached an apparently abandoned warehouse. Defendant got out of the car, made B.H. get out as well, and told Dickens to shoot P.H. if he made a move. Defendant took B.H. behind the car where he raped her. Defendant then walked to the passenger side, opened the door to let Dickens out, and took the gun from Dickens. Dickens raped B.H. and forced her to perform fellatio on him while defendant walked beside the car, waving the gun and muttering to himself. Afterwards, they all got back into the car; and, defendant and Dickens took turns driving the car. Sometime later, defendant and Dickens got out of the car on Canal Boulevard.

P.H. and B.H. then drove to the Second District to report the crime. They both described defendant as shorter, darker, and more muscular than Dickens, who they described as being taller, thinner, lighter skinned, and wearing glasses. A few days later, they met with a police artist who drew a composite drawing of Dickens, but not of defendant. P.H. and B.H. also picked out defendant and Dickens from a photographic lineup; and, P.H. picked them both out from a physical lineup.

In the early morning hours of October 27, 1990, M.M. was dropping off her boyfriend, D.J., at his apartment on Pine Street when two men, both wearing bandannas on their faces, approached them. The taller, thinner, and lighter skinned of the two men held a gun, and he ordered D.J. to get into the back seat. The armed man got into the back seat as well while the shorter, darker, and more muscular man got into the front passenger seat. M.M. was ordered to drive around, and they eventually arrived at a warehouse near the Times-Picayune building. During the drive, the armed man instructed D.J. to keep looking out of the window.

M.M. was ordered to back her car up to the loading dock; and, after she stopped the car, the man in the front seat ordered her out of the car. They went to the rear of the car where he made her give him her panties and told her to remove her tampon, which the police later found. The man then raped M.M. The armed man then exited the car and raped her as well.

They got back into the car and made M.M. drive. The two men spotted a red Toyota, driven by Ivan Lagos, and they ordered M.M. to follow it. When the Toyota stopped at the intersection of Nashville and St. Charles Avenues, M.M.

was ordered to hit the Toyota. She hit it slightly; but Lagos did not get out and instead continued driving down Nashville. The two men ordered M.M. to keep following Lagos' Toyota; and when it stopped at Prytania, she again rammed into its rear.

M.M. exited her car as did Lagos. M.M. began to apologize to Lagos when the shorter man ran up to Lagos, pointed a gun in Lagos' face, and demanded Lagos' keys and wallet. Lagos gave them to him, and he and his companion then got into Lagos' car and drove away. The two men had also taken money from D.J. and M.M.

Lagos identified defendant in a physical lineup as the man who pointed the gun at him. Neither M.M. nor D.J. were able to identify their assailants, but both stated that defendant had the same build as the shorter man.

State v. Houghton, 619 So.2d 765, 766-68 (La. App. 4th Cir. 1993); State Record Volume 1 of 4, Louisiana Fourth Circuit Opinion, 92-KA-1738, pages 2-6, May 27, 1993.

Dickens was separately tried before a jury on eleven of the counts on May 20 through 24, 1991.[6] He was found guilty of counts one through five and not guilty as to counts six, eight, nine, ten, twelve and thirteen.[7] He was sentenced on June 18, 1991, to serve concurrent life sentences without benefit of parole, probation or suspension of sentence on counts one and two, to be served consecutively to the sentences received for the other counts; concurrent 99 years sentences without benefit of parole, probation or

---

[6]St. Rec. Vol. 4 of 4, Trial Minutes (Dickens), 5/20/91; Trial Minutes (Dickens), 5/21/91; Trial Minutes (Dickens), 5/22/91; Trial Minutes (Dickens), 5/23/91; Trial Minutes (Dickens), 5/24/91.

[7]St. Rec. Vol. 4 of 4, Trial Minutes (Dickens), 5/24/91; St. Rec. Vol. 3 of 4, Jury Verdict (Dickens) Count 1, 5/24/91; Jury Verdict (Dickens) Count 2, 5/24/91; Jury Verdict (Dickens) Count 3, 5/24/91; Jury Verdict (Dickens) Count 4, 5/24/91; Jury Verdict (Dickens) Count 5, 5/24/91; Jury Verdict (Dickens) Count 6, 5/24/91; Jury Verdict (Dickens) Count 8, 5/24/91; Jury Verdict (Dickens) Count 9, 5/24/91; Jury Verdict (Dickens) Count 10, 5/24/91; Jury Verdict (Dickens) Count 12, 5/24/91; Jury Verdict (Dickens) Count 13, 5/24/91.

suspension of sentence on counts three and four, to be served consecutively to the sentences received for the other counts; and life imprisonment without benefit of parole, probation or suspension of sentence on count five, to be served consecutively to the other sentences.[8]  His convictions and sentences were later affirmed by the Louisiana Fourth Circuit.[9]  He also later entered a guilty plea to count seven on the reduced charge of manslaughter for which he received a 21 year sentence, to be served consecutively to the other sentences.[10]

Houghtion was tried before a jury on all but count seven (second degree murder of Christopher Ciaccio) on August 19 through 21, 1991.[11]  He was found guilty as charged on each of the counts, one through six and eight through thirteen.[12]  On September 16, 1991, the state trial court sentenced Houghtion to serve concurrent life

---

[8]St. Rec. Vol. 3 of 4, Sentencing Minutes (Dickens), 6/18/91.

[9]State v. Dickens, 660 So.2d 583 (La. App. 4th Cir. 1995) (Table); St. Rec. Vol. 1 of 4, 4th Cir. Opinion, 93-KA-0142, 9/28/95.

[10]St. Rec. Vol. 3 of 4, Waiver of Constitutional Rights Plea of Guilty (Dickens), 1/13/92; St. Rec. Vol. 4 of 4, Plea Minutes, 1/13/92.

[11]St. Rec. Vol. 4 of 4, Trial Minutes, 8/19/91; Trial Minutes, 8/20/91; Trial Minutes, 8/21/91; Trial Minutes, 8/22/91.

[12]St. Rec. Vol. 4 of 4, Trial Minutes, 8/22/91; St. Rec. Vol. 3 of 4, Jury Verdict (Houghtion) Count 1, 8/22/91; Jury Verdict (Houghtion) Count 2,  8/22/91; Jury Verdict (Houghtion) Count 3, 8/22/91; Jury Verdict (Houghtion) Count 4, 8/22/91; Jury Verdict (Houghtion) Count 5, 8/22/91; Jury Verdict (Houghtion) Count 6, 8/22/91; Jury Verdict (Houghtion) Count 8, 8/22/91; Jury Verdict (Houghtion) Count 9, 8/22/91; Jury Verdict (Houghtion) Count 10, 8/22/91; Jury Verdict (Houghtion) Count 11, 8/22/91, Jury Verdict (Houghtion) Count 12, 8/22/91; Jury Verdict (Houghtion) Count 13, 8/22/91.

sentences without benefit of parole, probation or suspension of sentence on counts one and two, to be served consecutively to the sentences received on the other counts; 99 years in prison without benefit of parole, probation or suspension of sentence, on counts three and four, to be served consecutively to the other sentences; life in prison without benefit of parole, probation or suspension of sentence on count five, to be served consecutively to the other sentences; 15 years in prison on count six to be served without benefit of parole, probation or suspension of sentence and consecutively to the other sentences; concurrent life sentences without benefit of parole, probation or suspension of sentence on counts eight and nine, to be served consecutively to all other sentences; concurrent 99 year sentences without benefit of parole, probation or suspension of sentence on counts ten and eleven, to be served consecutively to all other sentences; life in prison without benefit of parole, probation or suspension of sentence on count twelve, to be served consecutively to all other sentences; 99 years in prison without benefit of parole, probation or suspension of sentence on count thirteen, to be served consecutively to all other sentences.[13]

On direct appeal, Houghtion's counsel argued that the state trial court erred in allowing the State to use Houghtion's prior arrests to impeach a defense character

---

[13]St. Rec. Vol. 4 of 4, Sentencing Minutes, 9/16/91; St. Rec. Vol. 3 of 4, Sentencing Form (Count 6), 9/16/91; Sentencing Form (Count 8), 9/16/91.

witness and in allowing the State to use Dickens's confession at trial.[14]  On May 27, 1993, the Louisiana Fourth Circuit affirmed Houghtion's convictions, finding no merit to his claims.[15]

On October 1, 1993, the Louisiana Supreme Court denied without stated reasons Houghtion's related writ application filed by counsel.[16]  Houghtion's conviction became final 90 days later, on December 30, 1993, when he did not file a writ application with the United States Supreme Court.  Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

On September 25, 1996, Houghtion submitted to the state trial court an application for post-conviction relief which was filed by the court on October 1, 1996.[17]  He argued that he received ineffective assistance of counsel, because his lawyer failed to (a) object to other crimes evidence used to impeach a character witness, (b) move for severance of the offenses and (c) object to the DNA evidence from Dr. Sudhir K. Sinha.

---

[14]St. Rec. Vol. 1 of 4, 4th Cir. Opinion, 92-KA-1738, 5/27/93.

[15]Id.

[16]State v. Houghton, 625 So.2d 178 (La. 1993); St. Rec. Vol. 2 of 4, La. S. Ct. Order, 93-K-1702, 10/1/93; La. S. Ct. Writ Application, 93-K-1702, 6/23/93.

[17]St. Rec. Vol. 1 of 4, Uniform Application for Post Conviction Relief, dated 9/25/96; St. Rec. Vol. 2 of 3, Mail Receipt, 10/1/96; 4th Cir. Order, 99-K-2670, 12/3/99 (recognizing the filing date of October 1, 1996).

On January 21, 1999, Houghtion filed an application for writ of mandamus with the Louisiana Fourth Circuit seeking to compel the state trial court to rule on his 1996 application for post-conviction relief.[18] The appellate court denied the application because Houghtion failed to attach a copy of the application for post-conviction relief.[19]

On March 12, 1999, Houghtion again sought relief from the Louisiana Fourth Circuit, indicating that he still had not received a ruling on his 1996 post-conviction application.[20] The court granted the application for the purpose of transferring the application for post-conviction relief to the state trial court for ruling within 60 days.[21] On September 16, 1999, the appellate court issued another order for the state trial court to rule on the application.[22]

In the meantime, on September 13, 1999, the state trial court denied Houghtion's post-conviction application as untimely filed pursuant to La. Code Crim. P. art. 930.8.[23]

---

[18]St. Rec. Vol. 2 of 4, 4th Cir. Writ Application, 99-K-0167, 1/21/99 (dated 1/19/99).

[19]St. Rec. Vol. 2 of 4, 4th Cir. Order, 99-K-0167, 2/25/99.

[20]St. Rec. Vol. 2 of 4, 4th Cir. Writ Application, 99-K-0634, 3/12/99.

[21]St. Rec. Vol. 2 of 4, 4th Cir. Order, 99-K-0634, 5/18/99.

[22]St. Rec. Vol. 2 of 4, 4th Cir. Order, 99-K-2114, 9/16/99; 4th Cir. Writ Application, 99-K-2114, 8/20/99.

[23]St. Rec. Vol. 1 of 4, Trial Court Judgment, 9/13/99.

The order was later reversed by the Louisiana Fourth Circuit, and the application was remanded for further review by the state trial court.[24]

On June 29, 2000, the state trial court denied Houghtion's application as meritless and granted him leave to file an amended application which it would consider as part of the overall case.[25]  Houghtion submitted a supplement to his post-conviction application on September 22, 2000, in which he asserted the following grounds for relief:[26]  (1) The grand jury indictment failed to allege the essential elements of the crimes charged. (2) There was insufficient evidence to support the crime against nature charge. (3) He was denied counsel at the line-up.

Seven years later, on December 27, 2007, Houghtion filed a writ application with the Louisiana Fourth Circuit complaining that he had not received a ruling on his supplemental claims.[27]  The court denied the request for writ of mandamus noting that, after a review of the supplemental claims, Houghtion was not entitled to relief.[28]  On

---

[24]St. Rec. Vol. 2 of 4, 4th Cir. Order, 99-K-2670, 12/3/99; 4th Cir. Writ Application, 99-K-2670, 10/21/99.

[25]St. Rec. Vol. 2 of 4, Trial Court Judgment, 6/29/00.

[26]Contrary to the State's opposition argument, the record does contain proof that Houghtion submitted the supplemental application.  St. Rec. Vol. 2 of 4, Supplement to Post-Conviction Application, dated 9/22/00; Certified Mail Receipts, 9/26/00.  The return receipt addressed to the Orleans Parish Criminal Court clerk of court is signed and dated September 27, 2000.

[27]St. Rec. Vol. 2 of 4, 4th Cir. Writ Application, 2007-K-1573, 12/7/07.

[28]St. Rec. Vol. 2 of 4, 4th Cir. Order, 2007-K-1573, 12/18/07.

9

October 24, 2008, the Louisiana Supreme Court also denied without stated reasons Houghtion's related writ application requesting a ruling on his supplemental claims.[29]

## II.   FEDERAL HABEAS PETITION

On December 3, 2008, the clerk of this court filed Houghtion's petition for federal habeas corpus relief, in which he asserts the following claims:[30] (1) Counsel was ineffective for failure to (a) object to the prosecution's references to his prior arrest to impeach a character witness, (b) move for severance of the offenses, and (c) object to the introduction of DNA evidence and testimony from Dr. Sinha. (2) The grand jury indictment failed to allege the essential elements of the crimes charged. (3) The evidence was insufficient to support the conviction for crime against nature. (4) He did not have an attorney present at the physical line-up.

The State filed a response in opposition to Houghtion's petition arguing that the petition was not timely filed.[31]   In his traverse to the State's original opposition, Houghtion contended that his supplemental petition was filed on September 22, 2000,

---

[29]State ex rel. Houghtion v. State, 992 So.2d 1031 (La. 2008); St. Rec. Vol. 2 of 4, La. S. Ct. Order, 2008-KH-0306, 10/24/08; La. S. Ct. Writ Application, 08-KH-0306, 2/12/08 (postal metered 1/11/08, dated 1/9/08).

[30]Rec. Doc. No. 1.

[31]Rec. Doc. No. 8.

and that the matter remained pending until the Louisiana Supreme Court denied his writ application in 2008, after which he promptly filed his federal petition.[32]

Upon initial review of the pleadings and state court records, I ordered the state to provide the court with a copy of the trial transcript and further briefing as to the merits of Houghtion's claims.[33]  In compliance with my orders, the State has provided the court with a supplemental volume of the state court record containing a copy of the available portions of the co-defendant's trial transcript and photographs taken at Houghtion's line-up.[34]  The transcript contains portions of the victims' testimony during Dickens's trial. In its supplemental response memorandum, the State argues that Houghtion's ineffective assistance of counsel claims were not properly exhausted in the state courts leaving them in procedural default.[35]  The State further argues that the remaining claims are without merit.  The record as supplemented is sufficient for this court to complete its review of all of Houghtion's claims.

III.   GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation,

---

[32]Rec. Doc. No. 9.

[33]Rec. Doc. Nos. 13, 15, 23, 28.

[34]St. Rec. Suppl. Vol. 1 of 1.

[35]Rec. Doc. No. 29.

including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[36] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Houghtion's petition, which, for reasons discussed below, is deemed filed in this federal court on November 3, 2008.[37]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

In this case, the State originally argued that Houghtion's federal petition was not timely filed because the record did not contain proof that he properly filed any

---

[36]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[37]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Houghtion's federal petition on December 3, 2008, when the filing fee was paid.  Houghtion's signature on the petition is dated November 3, 2008.  This is the earliest date on which he could have delivered the set of pleadings to prison officials for mailing.  The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition.  See Cousin v. Lensing, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

applications for state post-conviction or collateral review after June 29, 2000, until he filed a writ application with the Louisiana Fourth Circuit on December 27, 2007. As outlined in this report, the record contains proof that, on September 22, 2002, Houghtion submitted a supplement to his 1996 writ application as ordered by the state trial court. A copy of that submission was attached to his later-filed appellate writ application, along with certified mail receipts indicating that the submission was received in the state trial court's clerk's office on September 27, 2000.[38]

Under the applicable "mailbox rule," the fact that his supplemental application was not actually filed by the state trial court does not change the fact that it was considered "filed" when it was delivered to prison officials for mailing, "regardless of whether the pleading actually reaches the court." Stoot v. Cain, 570 F.3d 669, 672 (5th Cir. 2009). In this case, the certified mail receipt tends to show that the pleading at least reached the state court clerk's office, although it was not processed into the state court record.

Houghtion's conviction became final on December 30, 1993, prior to the effective date of the AEDPA on April 24, 1996. The United States Court of Appeals for the Fifth Circuit has held that a petitioner had a one-year grace period from that effective date, or until April 24, 1997, to file his federal petition or benefit from the tolling provisions allowed by the AEDPA and related case law. See Flanagan, 154 F.3d at 200 (defining

_____

[38]St. Rec. Vol. 2 of 4, Supplement to Post-Conviction Application, dated 9/22/00 (attached as an exhibit to 4th Cir. Writ Application, 2007-K-1573, 12/7/07); Certified Mail Receipts, 9/26/00.

the grace period); United States v. Flores, 135 F.3d 1000, 1004 (5th Cir. 1998), cert.

denied, 525 U.S. 1091 (1999) (defining the grace period); 28 U.S.C. § 2244(d)(2)

(defining statutory tolling); Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005) (addressing

equitable tolling).

Five months into this grace period, Houghtion submitted his application for post-

conviction relief in the state trial court on September 25, 1996.  That application, as

supplemented on September 22, 2000, remained pending through the denial of the related

writ applications by the Louisiana Fourth Circuit and the Louisiana Supreme Court

completed on October 24, 2008.  Just more than two months later, on November 3, 2008,

Houghtion timely filed this federal petition.  Thus, the State's statute of limitations

defense cannot be accepted in this case.

The State also argues that Houghtion did not properly exhaust his state court

remedies, since the state trial court did not rule on his supplemental application and the

state appellate court had before it only an application for a writ of mandamus, rather than

one for substantive review. The record indicates, however, that the Louisiana Fourth

Circuit declined to issue a writ of mandamus because it found that Houghtion was not

entitled to relief on the supplemental claims.[39]  The Louisiana Supreme Court also denied

---

[39]St. Rec. Vol. 2 of 4, 4th Cir. Order, 2007-K-1573, 12/18/07.

relief on those claims in the related writ application.[40]  The fact that the trial court failed

to rule on the supplemental claims, which would have completed exhaustion, does not

prevent this federal court from considering his meritless claims on habeas review.  28

U.S.C. § 2254(b)(2).

IV.    STANDARDS OF A MERITS REVIEW

Amended 28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for

questions of fact, questions of law and mixed questions of fact and law in federal habeas

corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be

correct . . . and we will give deference to the state court's decision unless it 'was based

on an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28

U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The amended statute also

codifies the "presumption of correctness" that attaches to state court findings of fact and

the "clear and convincing evidence" burden placed on a petitioner who attempts to

overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and

fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state

---

[40]State ex rel. Houghton v. State, 992 So.2d at 1031; St. Rec. Vol. 2 of 4, La. S. Ct. Order, 2008-KH-0306, 10/24/08.

court's decision "'was contrary to, or involved an unreasonable application of, clearly

established [Supreme Court precedent.]'" <u>Penry v. Johnson</u>, 215 F.3d 504, 507 (5th Cir.

2000) (quoting <u>Miller v. Johnson</u>, 200 F.3d 274, 280-81 (5th Cir.), <u>cert. denied</u>, 531 U.S.

849 (2000)), <u>aff'd in part, rev'd in part on other grounds</u>, 532 U.S. 782 (2001); <u>Hill</u>, 210

F.3d at 485.   The United States Supreme Court has clarified the Section 2254(d)(1)

standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ
> if the state court arrives at a conclusion opposite to that reached by this
> Court on a question of law or if the state court decides a case differently
> than this Court has on a set of materially indistinguishable facts.  Under the
> "unreasonable application" clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing legal principle from
> this Court's decisions but unreasonably applies that principle to the facts
> of the prisoner's case.

<u>Williams v. Taylor</u>, 529 U.S. 362, 405-06, 412-13 (2000); <u>Penry</u>, 532 U.S. at 792-93;

<u>Hill</u>, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because

that court concludes in its independent judgment that the state court decision applied [a

Supreme Court case] incorrectly.'" <u>Price v. Vincent</u>, 538 U.S. 634, 641 (2003) (quoting

<u>Woodford v. Visciotti</u>, 537 U.S. 19, 24-25 (2002)) (brackets in original); <u>Bell v. Cone</u>,

535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the

only question for a federal habeas court is whether the state court's determination is

objectively unreasonable."  <u>Neal v. Puckett</u>, 286 F.3d 230, 246 (5th Cir. 2002), <u>cert.

denied</u>, <u>sub nom</u>, <u>Neal v. Epps</u>, 537 U.S. 1104 (2003). The burden is on the petitioner to

show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

V.     INEFFECTIVE ASSISTANCE OF COUNSEL (CLAIM NO. 1)

Houghtion alleges that his counsel was ineffective for failing to (a) object to the prosecutor's reference to his prior offenses, (b) move for a severance of the counts, and (c) object to the expert's DNA evidence.  He first raised these claims in his application for post-conviction relief, which was denied by the state trial court as meritless. Although it does not appear that he sought review of that ruling in the Louisiana Fourth Circuit, he later sought review of the denial of these claims in the Louisiana Supreme Court.  That writ application was denied without reasons.

The issue of ineffective assistance of counsel is a mixed question of law and fact. Woodfox v. Cain, 609 F.3d 774, 789 (5th Cir. 2010); Richards v. Quarterman, 566 F.3d 553, 561 (5th Cir. 2009).  Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The standard for judging performance of counsel was established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting

17

prejudice.  Strickland, 466 U.S. at 697.  The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88.  Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694;  United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  Kimler, 167 F.3d at 893.  A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.'  It is not enough under Strickland, however, 'that the errors had some conceivable effect on the outcome of the proceeding.'"  Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693).

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance."  Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999) (citing Strickland, 466 U.S. at 689-90).  In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of

hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial.  Strickland, 466 U.S. at 689; Neal v. Puckett, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001).

On habeas review, the United States Supreme Court has recently clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms,  not whether it deviated from best practices or most common custom."  Harrington v. Richter, __ U.S. __, 131 S.Ct. 770, 788 (2011).  The Harrington Court went on to recognize the high level of deference owed to a state court's findings under Strickland in light of the AEDPA:

> The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.  The Strickland standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

"A court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight."  Bell, 535 U.S. at 697 (citing Strickland, 466 U.S. at 689).  This court must apply the "strong presumption" that counsel's strategy and defense tactics fall "within

19

the wide range of reasonable professional assistance." Strickland, 466 U.S. at 690. Federal courts have consistently recognized that tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)). Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. Strickland, 466 U.S. at 689; Moore v. Johnson, 194 F.3d at 591. The burden is on petitioner to demonstrate that counsel's strategy was constitutionally deficient. Id.

A.     Failure to Object to Prosecutor's Use of Prior Arrests

Houghtion alleges that his counsel should have objected when the prosecutor referred to his prior arrests while questioning a defense character witness at trial. In his federal petition, Houghtion fails to identify which character witness or indicate what question(s) he found to be inappropriate. In his state application for post-conviction relief, however, Houghtion referenced the following alleged portion of testimony from a witness during questioning by the prosecution:[41]

Q.     . . . You know about other stolen cars, don't you?
A.     Yes, I do.
Q.     And who have you been in stolen cars with before?
A.     With Ronald.
Q.     And who else?
A.     And Robert (crying).

---

[41]St. Rec. Vol. 1 of 4, Uniform Application for Post-Conviction Relief, p. 8, dated 9/25/96.

> Q.   In fact, were you with them on October 16, 1990 when they were
>       stopped by - - appears to be in the 1800 block of Cambronne Street
>       for possess[ion] of stolen proper[ty], an automobile?
> A.   No.
> Q.   How about in Metairie in 1986 - - I'm sorry, in April of 1986?
> A.   No.
> Q.   For possession of a stolen automobile?
> A.   No.
> Q.   So joy riding in stolen cars is in keeping with his character, isn't it?
> A.   Yes.

I have not been provided with a copy of the transcript by either Houghtion or the

State to confirm the accuracy of the quoted colloquy.  However, for the following

reasons, the record nevertheless is sufficient to consider the claim.

The record indicates that, other than Houghtion himself, the defense apparently

called Reverend Larry Story and Michelle Corley as witnesses.[42]  Reverend Story's

character testimony was the subject of a claim on direct appeal alleging that the trial

court erred in allowing the State to use evidence of prior arrests in cross-examining

Story. The Louisiana Fourth Circuit held that reference to the prior arrests was admissible

and the questions posed to Story about Houghtion's prior arrests were appropriate on

cross-examination of a character witness under Louisiana law.

In his state post-conviction application, Houghtion noted the State's similar cross-

examination of Corley as the basis for an ineffective assistance of counsel claim for

failure to object to the questions.  The claim was denied as meritless, though no particular

---

[42]St. Rec. Vol. 4 of 4, Trial Minutes, 8/22/91.

analysis was provided by the state courts.  Based on a comparison of the quoted language here and in that state application, it appears that Houghtion is challenging the cross-examination of Corley.  I will assume for the sake of this discussion, as Houghtion suggests, that he was the subject of this exchange (as opposed to his co-defendant) and that Corley was called as a character witness on his behalf at trial.

For counsel to have performed deficiently or prejudicially in failing to object to this line of questioning, Houghtion must establish that reasonable counsel would have lodged the objection.  Under Louisiana law, however, the State was allowed to ask this type of question to a character witness, and an objection would have been futile.

While the State may have referenced other crimes evidence at his trial, it was introduced after Houghtion "opened the door" by offering evidence of his own good character.  Under Louisiana law, when a defendant chooses to place his character at issue by introducing evidence of his good character, the State is permitted to rebut that evidence, either by calling witnesses to testify to the defendant's bad character or by impeaching the ability of the defense's character witness to testify to the defendant's good character.  State v. Bagley, 378 So.2d 1356, 1358 (La. 1979).  In Bagley, the Louisiana Supreme Court determined that such questions are appropriate:

> This Court has adopted the position that the cross-examination of a character witness may extend to his knowledge of particular misconduct, prior arrests, or other acts relevant to the particular moral qualities as are pertinent to the crime with which defendant is charged.  The purpose of such inquiries is to expose the witnesses' possible lack of knowledge

regarding the character of the defendant, or the witnesses' standard of evaluation.

State v. Bagley, 378 So.2d at 1358 (citations omitted); State v. Galliano, 945 So.2d 701, 722 (La. App. 5th Cir. 2006); see also, State v. Letulier, 750 So.2d 784, 797 n.19 (La. 1998) ("The opposing party may nevertheless cross-examine the witness as to his knowledge of specific bad acts of the accused or another witness. La. C. E. art. 405(A); 608(C). State v. Bagley, 378 So.2d 1356, 1358 (La. 1979).")

The Louisiana Supreme Court also later formulated safeguards to regulate the prosecution's cross-examination of character witnesses by requiring the trial court to determine the following in allowing the cross-examination: (1) There is no question as to the fact of the subject matter of the rumor; that is, of the previous arrest, conviction or other pertinent misconduct of the defendant. (2) A reasonable likelihood exists that the previous arrest, conviction or other pertinent misconduct would have been known about the neighborhood or community before the alleged commission of the offense on trial. (3) Neither the event, conduct nor rumor concerning it occurred at a time too remote from the present offense. (4) The earlier event, misconduct or rumor concerned the specific trait involved in the offense for which the accused is on trial. (5) The examination is conducted in the proper question form, i.e. "Have you heard?" State v. Johnson, 389 So.2d 372, 376-77 (La. 1980). The Louisiana Supreme Court later ruled that, in spite of these safeguards, the ultimate question remained whether the prosecution's

cross-examination unduly prejudiced the defendant before the jury.  See State v. Sepulvado, 672 So.2d 158, 167 (La.), cert. denied, 519 U.S. 934 (1996); State v. Hasten, No. 2007KA1025, 2007 WL 4480667, at *10-11 (La. App. 1st Cir. Dec. 21, 2007).

On direct appeal, the Louisiana Fourth Circuit considered each of these factors in assessing whether the use of Houghton's prior arrests to cross-examine Story, over defense counsel's objections, was appropriate.  The court held that the information and testimony related to the prior arrests was admissible and not prejudicial to the defense.

In reaching this conclusion, the court found, among other things, that when Houghton testified on his own behalf, he admitted to the substance of the arrests at issue and therefore had no basis to challenge the accuracy of the information.  The information sought to be used by the State also was not too remote in time to the charged crimes and was appropriate to question the witness's knowledge of Houghton's character.  The court resolved that, under the Louisiana standards set forth above, the state trial court did not err in allowing the State to use the arrests in the cross-examination.

Thus, by the time Corley testified, Houghton's counsel had already objected to the arrest reference during Story's testimony, and that objection was unsuccessful.  As discussed above, use of the arrests to challenge the character testimony presented by Houghton was not contrary to Louisiana law.  Houghton has not demonstrated that the state trial court's ruling would have been any different if counsel had also objected during Corley's character testimony.

24

For these reasons, Houghtion has not demonstrated that counsel's failure to object during Corley's testimony was deficient or prejudicial since the objection would have been meritless.  See Green v. Johnson, 160 F.3d 1029, 1037 (5th Cir. 1998), cert. denied, 525 U.S. 1174 (1999) (failure to make a frivolous objection is not deficient performance below an objective level of reasonableness); Wood v. Quarterman, 503 F.3d 408, 413 (5th Cir. 2007) ("'[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite.'") (quoting Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994)). Houghtion has not established that counsel gave ineffective assistance of counsel on this ground. The state courts' denial of relief was not contrary to, or an unreasonable application of, Strickland.  Houghtion is not entitled to relief on this claim.

B.    Failure to Move for Severance of Offenses

While Houghtion lists this claim in his petition, he fails to elaborate on it or discuss its basis in his brief before this court or in the post-conviction application previously submitted in the state trial court.  I will therefore construe this claim broadly and address it in that manner.

The record indicates that, after the state trial court severed the co-defendants' trials, counsel for co-defendant Dickens also moved for severance of the counts for trial purposes.[43]  After receiving an opposition to the motion from the State, the state trial

---

[43]St. Rec. Vol. 3 of 4, Memorandum in Opposition to Severance of Counts, undated.

25

court ruled in open court and in writing that joinder of the counts was proper under La. Code Crim. P. art. 493 and related state law and that the counts could be jointly tried.[44] The court later extended its ruling to all parties.[45]

The record does not provide, and Houghtion has not shown, any reason for his counsel to duplicate the motion already brought by Dickens's counsel and fully ruled upon. He also does not establish that the state trial court would have ruled any differently had his counsel filed another, duplicative motion.  See Koch v. Puckett, 907 F.2d 524, 527 (5th Cir. 1990) (concluding that "counsel is not required to make futile motions or objections."); Morris v. Thaler, No. 09-10529, 2011 WL 1886096, at * 4 (5th Cir. May 18, 2011) (quoting Koch, 907 F.2d at 527).

Houghtion has not demonstrated that his counsel's performance in this regard fell below constitutional standards.  The state courts' denial of relief was not contrary to, or an unreasonable application of, Strickland.  Houghtion is not entitled to relief on this claim.

C.      Failure to Object to DNA Evidence

Houghtion alleges that his counsel was ineffective in failing to object to the DNA evidence and testimony of Dr. Sudhir K. Sinha, who demonstrated that Houghtion's semen and DNA were found on the underwear of rape victim MM. Houghtion argues that

---

[44]St. Rec. Vol. 3 of 4, Trial Court Ruling, 4/8/91; Minute Entry, 4/9/91.

[45]St. Rec. Vol. 3 of 4, Minute Entry, 4/17/91.

MM testified that he forced her to remove her underwear before he raped her.  He contends that if this were true, his DNA could not have been on the underwear.  He suggests that his counsel should have challenged the chain of custody and the substance of the DNA testing.

The record reflects that before trial Houghtion's counsel successfully moved for the appointment of a defense DNA expert and to preserve the DNA evidence for further testing.[46]  By doing this, and in his written motions, counsel demonstrated due diligence in his attention to the accuracy and integrity of the DNA evidence in possession of the State.  Having been provided with the report or opinion of the defense's expert, which was authorized by the trial court, counsel apparently determined that there was no basis to make the challenges now suggested by Houghtion.

In addition, according to Houghtion's recitation of the transcript, the victim MM testified that he removed her underwear as he prepared to rape her.[47]  The last place she saw her underwear before it was recovered from the scene was in Houghtion's hand.[48] This circumstance would have provided an opportunity for his DNA to have been on MM's underwear and a basis for the expert to reach his opinion.

---

[46]St. Rec. Vol. 3 of 4, Motion to Declare Defendant Indigent and For Appropriation of Funds to Hire or Appoint Experts, 5/15/91; Motion to Preserve Evidence, 5/15/91; St. Rec. Vol. 4 of 4, Minute Entry, 5/20/91.

[47]Rec. Doc. No. 1, p. 25.

[48]Id.

Houghtion has offered nothing to suggest that counsel did not adequately prepare to defend against the State's DNA evidence or that he had cause to object to Dr. Sinha's expert testimony. The denial of relief on this claim was not contrary to or an unreasonable application of <u>Strickland</u>. He is not entitled to relief on this claim.

## VI.   DEFECTIVE INDICTMENT (CLAIM NO. 2)

Houghtion claims that the indictment against him was defective because it failed to allege the essential elements of each of the crimes charged, specifically aggravated rape, aggravated kidnapping, armed robbery and aggravated crime against nature.

To the extent Houghtion argues that the indictment failed to comply with the requirements of Louisiana law regarding assertion of the elements of the crime of second degree murder, a federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." <u>Wilkerson v. Whitley</u>, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted); <u>see also</u> <u>Swarthout v. Cooke</u>, __ U.S. __, 131 S. Ct. 859, 861 (2011) (federal habeas review does not lie for errors of state law). This court's analysis focuses instead on due process considerations, and due process requires that the court grant habeas relief when the errors of the state court make the underlying proceeding fundamentally unfair. <u>Neyland v. Blackburn</u>, 785 F.2d 1283, 1293 (5th Cir. 1986). Thus, the court may consider Houghtion's arguments only in the context of federal constitutional law.

The United States Court of Appeals for the Fifth Circuit has declined to review claims of insufficient indictment forms because "[t]he sufficiency of a state indictment is not a matter for federal habeas corpus relief unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction . . . [and] this can be determined only by looking to the law of the state where the indictment was issued." Alexander v. McCotter, 775 F.2d 595, 598 (5th Cir. 1985) (citation and quotations omitted) (emphasis added); Evans v. Cain, 577 F.3d 620, 624-25 (5th Cir. 2009); Davis v. Craig, 66 F.3d 319, 1995 WL 534730, at *3 (5th Cir. 1995) (Table, Text in Westlaw) (same).  Resolution of such an issue on federal habeas review is precluded "[w]hen it appears ... that the sufficiency of the indictment was squarely presented to the highest court of the state on appeal, and that court held that the trial court had jurisdiction over the case. . . ."  Alexander, 775 F.2d at 598 (quotation and citation omitted).

Houghtion's claim challenging the sufficiency of the indictment was considered by the Louisiana Fourth Circuit and the Louisiana Supreme Court in his post-conviction writ applications.  By denying the application, the Louisiana Supreme Court necessarily acquiesced in the state appellate court's finding that he was not entitled to relief on the claim.  See Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991); Alexander, 775 F.2d at 599 ("By refusing to grant appellant relief ... the Texas Court of Criminal Appeals has necessarily, though not expressly, held that the Texas courts have jurisdiction and that the indictment is sufficient for that purpose.")  The Louisiana Supreme Court has

29

therefore had the opportunity to address Houghtion's challenge to his indictment and has by inference determined that the indictment was proper.  For this reason, federal review of this claim is prohibited.

Even applying due process analysis, however, Houghtion cannot succeed unless he shows that the indictment was so defective that it deprived the convicting court of jurisdiction.  McKay v. Collins, 12 F.3d 66, 68 (5th Cir. 1994).  He has not done so in this case.

The indictment form used in Houghtion's case conformed substantially with the form authorized by La. Code Crim. P. arts. 462[49] and 465.[50]  The latter article provides the language to be used in charging particular offenses.  As it relates to Houghtion's indictment, it provides as follows:

A.    The following forms of charging offenses may be used, but any other forms authorized by this title may also be used: [...]

16.    Crime Against Nature--A.B. committed crime against nature with C.D. by _____ (describe the act). [...]

29.    Aggravated Kidnapping--A.B. committed aggravated kidnapping of C.D. [...]

---

[49]St. Rec. Vol. 1 of 4, Indictment, 12/20/90.

[50]La. Code Crim. P. art. 465(A)(32) provides the short form language for second degree murder:
A. The following forms of charging offenses may be used, but any other forms authorized by this title may also be used: . . .
32.  Second Degree Murder--A.B. committed second degree murder of C.D.
B.  The indictment, in addition to the necessary averments of the appropriate specific form hereinbefore set forth, may also include a statement of additional facts pertaining to the offense charged. If this is done it shall not affect the sufficiency of the specific indictment form authorized by this article.

39.     Aggravated Rape--A.B. committed aggravated rape upon C.D. [...]

42.     Armed Robbery--A.B., while armed with a dangerous weapon, robbed C.D. [...]

B.     The indictment, in addition to the necessary averments of the appropriate specific form hereinbefore set forth, may also include a statement of additional facts pertaining to the offense charged.  If this is done it shall not affect the sufficiency of the specific indictment form authorized by this article.

The language used in Houghtion's indictment tracks the language of the statute. The grand jury also included additional facts not required by, but allowed in, Part B of the statute.  This did not affect the sufficiency of the indictment.

Furthermore, the United States Supreme Court has held that an indictment is sufficient if it both informs the defendant of the accusation against him so as to enable him to prepare his defense and affords him protection against double jeopardy.  United States v. Debrow, 346 U.S. 374 (1953); United States v. Ramos, 537 F.3d 439, 459 (5th Cir. 2008); see also, La. Code Crim. P. art. 464.[51]  The same indictment form used in Houghtion's case has been found to provide the due process protections required by federal law.   Accord Liner v. Phelps, 731 F.2d 1201 (5th Cir. 1984) (addressing Louisiana short form indictment and first degree murder); see also Thompson v. Cain,

_____

[51]La. Code Crim. P. art. 464 provides:
The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged.  It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated.  Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice (emphasis added).

No. 08-0252, 2009 WL 775043, at *10 (W.D. La. Mar. 24, 2009) (addressing Louisiana short form indictment and armed robbery in attached Report and Recommendation adopted by District Court); Forman v. Cain, No. 07-4200, 2008 WL 1746710, at *9 n.15 (E.D. La. Apr. 14, 2008) (addressing Louisiana short form indictment and aggravated rape in attached Report and Recommendation adopted by District Court); Bergeron v. Cain, No. 06-1304, 2006 WL 2947920, at *6 n.7 (E.D. La. Oct. 13, 2006) (addressing Louisiana short form indictment and aggravated rape in attached Report and Recommendation adopted by District Court).

The indictment clearly notified Houghtion of the statutory provisions he was accused of violating, including some facts of the particular armed robberies, the date and venue of each crime and the identity of each victim. The indictment provided more than adequate information to apprise him of the crimes with which he was charged, all sufficient to avoid double jeopardy issues and to allow for preparation of his defense.

The form and details provided in Houghtion's indictment comply with the test for constitutional sufficiency established by the Supreme Court. Thus, the state courts' denial of relief was not contrary to or an unreasonable application of Supreme Court precedent. Houghtion is not entitled to relief on this claim.

VII.   INSUFFICIENT EVIDENCE TO SUPPORT CRIME AGAINST NATURE CONVICTION (CLAIM NO. 3)

Houghtion alleges that the evidence was insufficient to support his conviction on count six, aggravated crime against nature.  He claims that the State failed to produce evidence to establish that he was the person who committed the offense.  He suggests that the victim's testimony indicated that his co-defendant was the person she described, not him.  He alleges, therefore, that the State failed to produce evidence to exclude every reasonable hypothesis that he was innocent, or at least not the perpetrator of this particular crime.

On federal habeas corpus review, the court does not apply Louisiana's "reasonable hypothesis" standard, but must apply the federal standard announced in Jackson v. Virginia, 443 U.S. 307 (1979), in a manner consistent with the AEDPA standard of review.[52]  Gilley v. Collins, 968 F.2d 465, 467 (5th Cir. 1992) (citing Schrader v. Whitley, 904 F.2d 282, 284 (5th Cir. 1990)); Williams v. Cain, 408 Fed. Appx. 817, 821 (5th Cir. 2011) (indicating that, although Louisiana standard is heavier burden, the federal habeas court is bound to the Jackson standard, citing Schrader, 904 F.2d at 284).

---

[52]Louisiana's evidence rule under La. Rev. Stat. Ann. § 15:438 "is not a purely separate test from the Jackson standard to be applied instead of a sufficiency of the evidence test . . . .  Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt."  State v. Porretto, 468 So. 2d 1142, 1146 (La. 1985); accord State v. Williams, 693 So. 2d 204, 208 (La. App. 4th Cir. 1997).  The reasonable hypothesis standard under state law is "just an evidentiary guide for the jury.  If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails."  State v. Maxie, 614 So. 2d 1318, 1321 (La. App. 3d Cir. 1993); accord State v. Williams, 693 So. 2d at 208.

Under <u>Jackson</u>, the court must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. <u>Id.</u>, 443 U.S. at 319; <u>Perez v. Cain</u>, 529 F.3d 588, 594 (5th Cir. 2008); <u>Williams v. Cain</u>, 408 Fed. Appx. at 821. Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law. <u>Perez</u>, 529 F.3d at 594 (citing <u>Jackson</u>, 443 U. S. at 324 n. 16). The court's consideration of the sufficiency of the evidence extends only to what was presented at trial. <u>See</u> <u>Cullen v. Pinholster</u>, __ U.S. __, 131 S. Ct. 1388, 1398 (2011) (review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits); <u>see also</u>, <u>McDaniel v. Brown</u>, __ U.S. __, 130 S.Ct. 665, 672, 674 (2010) (recognizing that a reviewing court is to consider the trial evidence as a whole under <u>Jackson</u>); <u>Johnson v. Cain</u>, 347 Fed. Appx. 89, 91 (5th Cir. 2009) (<u>Jackson</u> standard relies "upon the record evidence adduced at the trial.") (quoting <u>Jackson</u>, 443 U.S. at 324).

Review of the sufficiency of the evidence, however, does <u>not</u> include review of the <u>weight</u> of the evidence or the <u>credibility</u> of the witnesses, because those determinations are the exclusive province of the jury. <u>United States v. Young</u>, 107 Fed. Appx. 442, 443 (5th Cir. 2004) (citing <u>United States v. Garcia</u>, 995 F.2d 556, 561 (5th Cir. 1993); <u>see also</u> <u>Jackson</u>, 443 U.S. at 319 (noting that it is the jury's responsibility "to

34

resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").  Thus, all credibility choices and conflicting inferences are to be resolved in favor of the verdict.  Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005).  A reviewing federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses for that of the fact-finder.  Alexander, 775 F.2d at 598.  In addition, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'"  Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir.2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)).

A claim of insufficient evidence presents a mixed question of law and fact.  Perez, 529 F.3d at 593-94;  Maes v. Thomas, 46 F.3d 979, 988 (10th Cir. 1995).  Therefore, this court must examine whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

In count six of the indictment, Houghton was charged with aggravated crime against nature against the victim BH.  Aggravated crime against nature is defined by La. Rev. Stat. Ann. § 14:89.1 as follows:

> A.   Aggravated crime against nature is crime against nature committed under any one or more of the following circumstances:
>
> (1)   When the victim resists the act to the utmost, but such resistance is overcome by force;

(2)    When the victim is prevented from resisting the act by threats of great and immediate bodily harm accompanied by apparent power of execution;

(3)    When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon; or

(4)    When through idiocy, imbecility, or any unsoundness of mind, either temporary or permanent, the victim is incapable of giving consent and the offender knew or should have known of such incapacity;

(5)    When the victim is incapable of resisting or of understanding the nature of the act, by reason of stupor or abnormal condition of mind produced by a narcotic or anesthetic agent, administered by or with the privity of the offender; or when he has such incapacity, by reason of a stupor or abnormal condition of mind from any cause, and the offender knew or should have known of such incapacity; or

(6)    When the victim is under the age of seventeen years and the offender is at least three years older than the victim.

A crime against nature referred to in the statute "is the unnatural carnal copulation by a human being with another of the same sex or opposite sex or with an animal, . . .; and, when committed by a human being with another, the use of the genital organ of one of the offenders of whatever sex is sufficient to constitute the crime." La. Rev. Stat. Ann. § 14:89. The Louisiana Supreme Court has held that unnatural carnal copulation includes oral-genital contact between a defendant and a victim. State v. Smith, 661 So.2d 442 (La. 1995); State v. Phillips, 365 So.2d 1304, 1308 (La. 1978). Aggravated crime against nature is a crime of general criminal intent. La. Rev. Stat. Ann. §§ 14:10, 11. A victim's testimony alone can establish the elements of the offense of aggravated crime against nature. State v. Lambert, 550 So.2d 847, 853 (La. App. 2d Cir. 1989) (citing State v. Robinson, 491 So.2d 451 (La. App. 1st Cir. 1986)).

36

In addition, Louisiana law provides that "[a]ll persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals."  La. Rev. Stat. Ann. § 14:24; accord, State v. Watson, 529 So.2d 94, 97-98 (La. App. 4th Cir. 1988) (finding defendant to be principal in rape where he held gun to the head of a first victim while co-defendant raped second victim); State v. Vicknair, 52 La. Ann. 1921, 28 So. 273 (La. 1900) (applied principal definition to co-defendant in crime against nature charge noting that "'those who are present, aiding and abetting the offense, are all principals,'" citing Archb. Cr. Pl. & Prac. 185).

The evidence and testimony, as summarized by the Louisiana Fourth Circuit, established that Houghton, after raping B.H. himself, spoke with Dickens and let him out of the car.[53]  Houghton took the gun from Dickens.[54]  He remained next to the car, with the gun in hand, while Dickens raped B.H. and forced her to perform fellatio on

---

[53] State v. Houghton, 619 So.2d at 767; (La. App. 4th Cir. 1993); St. Rec. Vol. 1 of 4, 4th Cir. Opinion, 92-KA-1738, pp. 2-3, 5/27/93.

[54] Id.

him.[55]  These facts, recounted by the Louisiana Fourth Circuit, are consistent with the testimony that B.H. gave at Dickens's trial.[56]

Although Houghtion did not force B.H. to commit fellatio upon him, he was present for and enabled Dickens in his sexual attack upon B.H.  Thus, there was sufficient evidence to establish under Louisiana law that Houghtion was a principal to the aggravated crime against nature committed against B.H.  The state courts' denial of relief on this claim was not contrary to or an unreasonable application of Supreme Court law.  Houghtion is not entitled to relief on this claim.

## VIII.   DENIAL OF COUNSEL AT LINE-UP (CLAIM NO. 4)

Houghtion alleges that he was denied counsel when he attended a physical line-up identification procedure after his arrest.  He claims that the Orleans Indigent Defender Program ("OIDP") had already been appointed to represent him when the trial court ordered the line-up.  He also contends that Detective James Steinkamp testified that the OIDP was notified about the line-up and advised that he would need counsel present.  He further claims, however, that the line-up was conducted without counsel present.  Houghtion argues that he was entitled to have counsel present under the Sixth and Fourteenth Amendments and state constitutional law, citing Kirby v. Illinois, 406 U.S.

---

[55]Id.

[56]She also testified at Dickens's trial that, while Dickens raped her, Houghtion yelled out instructions for Dickens not to ejaculate inside of her and to show her some respect.  St. Rec. Suppl. Vol. 1 of 4, Transcript of Portions of Trial Testimony, pp. 58-59, 5/20-24/91.

682 (1972) and <u>United States v. Wade</u>, 388 U.S. 218 (1967), among other decisions in which the Supreme Court provided that defendants have a constitutional right to counsel at post-indictment line-ups.  Houghtion argues that the presence of counsel could have served to limit the duration of witness observation or to assure that a proper, non-suggestive line-up was conducted.

Houghtion's claim that the denial of counsel at his line-up violated Louisiana law is not cognizable in a Section 2254 petition.  <u>See</u> <u>Swarthout</u>, 131 S. Ct. at 861 (federal habeas review does not lie for errors of state law); <u>Stewart v. Cain</u>, 189 F.3d 468, 1999 WL 511903, at *1 (5th Cir. Jul. 1, 1999) (Table, Text in Westlaw) (state law claim that lack of counsel at line-up not cognizable under Section 2254).  In addition, he is not entitled to relief under the Sixth and Fourteenth Amendments for the following reasons.

The Supreme Court has long recognized that the right to counsel is among the most fundamental rights of the criminal justice system.  "Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive, for it affects his ability to assert any other right he may have."  <u>Penson v. Ohio</u>, 488 U.S. 75, 84 (1988).  The Supreme Court has held that "a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him."  <u>Kirby v. Illinois</u>, 406 U.S. 682, 688 (1972); <u>Livingston v. Hargett</u>, 9 F.3d 1547, 1993 WL 503448, at *2 (5th Cir. Nov. 24, 1993) (Table, Text in Westlaw).  The initiation of criminal proceedings places the

39

defendant in the "intricacies of substantive and procedural criminal law" and "marks the commencement of 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable." Kirby, 406 U.S. at 689-90. The right to counsel attaches specifically at the time of arraignment or the preliminary hearing. Kirby, 406 U.S. at 688-89; Powell v. Alabama, 287 U.S. 45, 66-71 (1932) (right to counsel attaches at time of arraignment on formal charges). The Supreme Court has further clarified that the right to counsel guaranteed by the Sixth Amendment applies at the first appearance before a judicial officer at which a defendant is told of the formal accusation against him. Rothgery v. Gillespie County, 554 U.S. 191, 194 (2008) (citing Brewer v. Williams, 430 U.S. 387, 398-399 (1977)); Michigan v. Jackson, 475 U.S. 625, 629, n.3 (1986)).

In this case, the record confirms, as suggested by the State, that Houghtion's claim is based on factual error. The record demonstrates that Houghtion was arrested on October 29, 1990.[57] The physical line-up in question was conducted on October 31, 1990.[58] The line-up was not ordered by the court. Instead, Detective Steinkamp obtained an order merely securing the presence of Houghtion and two other inmates.[59] Detective Steinkamp noted in his report that OIDP failed to send a representative, but he did not

---

[57]St. Rec. Vol. 3 of 4, Screening Action Form (2 pages), 12/12/90.

[58]St. Rec. Vol. 2 of 4, Incident Report, page 2 of 7, 10/31/90; St. Rec. Suppl. Vol. 1 of 1, Phonographs of Physical Line-up, 10/31/90.

[59]Id.

indicate to which of the three inmates he was referring.[60]  All of the viewing victims[61] called to the line-up were interviewed separately after the viewing.[62]  Only two victims made positive identifications of another perpetrator from another armed robbery.[63]

The record further reflects that the District Attorney did not prepare its screening report on the charges until December 12, 1990.[64]  Houghtion was not indicted by the grand jury until December 20, 1990.[65]  His first appearance before the trial court was on February 15, 1991, at which time he was not represented by counsel and at which time he notified the court that he would be represented by attorney Packard Phillips.[66]

The record confirms that Houghtion participated in the physical line-up on October 31, 1990, shortly after his arrest and well before he was formally charged by the indictment issued December 20, 1990.  The holdings in Kirby and United States v. Wade, on which he relies and which addressed the entitlement to counsel at post-indictment line-ups, are not applicable under the facts before this court.

---

[60]Id., page 4 of 7.

[61]Steinkamp contacted 52 victims from recently occurring armed robberies.

[62]Id., page 6 of 7.

[63]Id.

[64]St. Rec. Vol. 3 of 4, Screening Action Form (2 pages), 12/12/90.

[65]St. Rec. Vol. 1 of 4, Indictment, 12/20/90.

[66]St. Rec. Vol. 4 of 4, Minute Entry, 2/15/91.

I note also that there is <u>no</u> clearly established Supreme Court precedent affording a defendant the right to counsel at a pre-indictment line-up.  <u>Wallace v. Cain</u>, No. 06-11271, 2009 WL 3367052 (E.D. La. Oct. 15, 2009) (Engelhardt, J.) (Ordering adopting attached Report and Recommendation citing <u>Campbell v. Fischer</u>, 275 F. Supp.2d 321, 328 (E.D.N.Y. 2003)).  Thus, the state courts' denial of relief could not run afoul of Supreme Court law on this issue.

Houghtion has not demonstrated any constitutional error in or prejudice arising from the identification process as a result of the lack of counsel.  For the foregoing reasons, the state courts' denial of relief on this claim is not contrary to, or an unreasonable application of, Supreme Court precedent.  He is not entitled to relief on this claim.

## **RECOMMENDATION**

For all of the foregoing reasons, it is **RECOMMENDED** that the petition of Robert Houghtion for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served

with notice that such consequences will result from a failure to object.  <u>Douglass v.</u>
<u>United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28
U.S.C. § 636(b)(1)).[67]

New Orleans, Louisiana, this _____26th_____ day of July, 2011.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[67]<u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.